**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
08/07/2023
**JEFFREY P. COLWELL, CLERK**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.    1:23-cv-01782-SBP

Matthew Joseph Martinez & Stephen Eric Peacock, Plaintiff(s)

v.

**Jury Trial requested:**
**(please check one)**
\_\_\_ Yes _X_ No

Moses "Andre" Stancil,

Michelle Brodeur,

Kimberly Kline,

Amanda Retting, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

### AMENDED PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be*
*served by filing a notice of change of address.  Failure to keep a current address on file with the*
*court may result in dismissal of your case.*

Matthew J. Martinez, 186896, P.O. Box 999 – FCF, Canon City, CO 81215
  (Name, prisoner identification number, and complete mailing address)

N/A
  (Other names by which you have been known)

Stephen E. Peacock, 189184, P.O. Box 999 – FCF, Canon City, CO 81215
  (Name, prisoner identification number, and complete mailing address)

N/A
  (Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
_X_    Convicted and sentenced state prisoner(s)
____    Convicted and sentenced federal prisoner
____    Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If*
*more space is needed, use extra paper to provide the information requested.  The additional*
*pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Moses "Andre" Stancil – CDOC Executive Director;
          (Name, job title, and complete mailing address)

          CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

          At the time the claim(s) in this complaint arose, was this defendant acting under
          color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

          Defendant was sitting executive for the Colorado Department of Corrections

          Defendant 1 is being sued in his/her __ individual and/or _X_ official capacity.

2

Defendant 2:   Michelle Brodeur – CDOC Director Of Clinical Services;
          (Name, job title, and complete mailing address)

          CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

          At the time the claim(s) in this complaint arose, was this defendant acting under
          color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

          Defendant was sitting executive for the Colorado Department of Corrections

          Defendant 2 is being sued in his/her __ individual and/or _X_ official capacity.

Defendant 3:   Kimberly Kline – CDOC Director Of Behavioral Health;
          (Name, job title, and complete mailing address)

          CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

          At the time the claim(s) in this complaint arose, was this defendant acting under
          color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

          Defendant was sitting executive for the Colorado Department of Corrections

          Defendant 3 is being sued in his/her __ individual and/or _X_ official capacity.

Defendant 4:   Amanda Retting – CDOC Administrator SOTMP;
          (Name, job title, and complete mailing address)

          CDOC Central Office, 1250 Academy Park Loop, Colorado Springs, CO 80910

          At the time the claim(s) in this complaint arose, was this defendant acting under
          color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

          Defendant was sitting executive for the Colorado Department of Corrections

          Defendant 4 is being sued in his/her __ individual and/or _X_ official capacity.


## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*


_X_    State/Local Official (42 U.S.C. § 1983)


____    Federal Official
          As to the federal official, are you seeking:
          ___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
          ___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28

U.S.C. § 2201

_____    Other: (*please identify*) _____

## D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  42 U.S.C. § 1983 – Fourteenth Amendment Violation – Procedural Due Process

Claim one is asserted against these Defendant(s):

> CDOC Exec. Dir. – Moses Stancil
> CDOC Dir. Of Clinical Services – Michelle Brodeur
> CDOC Dir. Of Behavioral Health – Kimberly Kline
> CDOC Administrator SOTMP – Amanda Retting

The Plaintiffs have a state-created liberty interest in their ability to access sex offender

treatment consonant with the 1998 Act.

Under the Fourteenth Amendment to the United States Constitution, the Plaintiffs may

not be deprived of this liberty interest without due process of law.

The Defendants have violated the Plaintiff's right to due process by depriving them of the

opportunity to participate in sex offender treatment without notice, without an opportunity to

contest the deprivation of treatment, and without meaningful periodic review of their deprivation

or treatment.

The deprivation of treatment described herein constitutes an atypical and significant

hardship on them in relation to the ordinary incidents of prison life.

4

The Plaintiffs have both experienced a grievous loss because the Defendants have denied

them access to sex offender treatment thereby making them ineligible for parole or consideration

for parole.

As a direct and proximate result of the Defendants' failure to provide the Plaintiffs with

sufficient process regarding the deprivation of treatment described herein, the Plaintiffs have

suffered significant harms.

Without the declaratory and injunctive relief requested herein, the Plaintiffs will continue

to be harmed by the Defendants' conduct.


CLAIM TWO:  42 U.S.C. § 1983 – Fourteenth Amendment Violation – Substantive Due Process

Claim two is asserted against these Defendant(s):

> CDOC Exec. Dir. – Moses Stancil
> CDOC Dir. Of Clinical Services – Michelle Brodeur
> CDOC Dir. Of Behavioral Health – Kimberly Kline
> CDOC Administrator SOTMP – Amanda Retting


The Plaintiffs have a state-created liberty interest in their ability to access sex offender

treatment consonant with the 1998 Act.

The Defendants have violated the Plaintiff's liberty interest under the Fourteenth

Amendment by knowingly and willfully implementing and enforcing a policy and actual practice

of arbitrarily depriving some offenders of statutorily-mandated treatment despite actual

knowledge that such deprivation will make the offender ineligible for parole – causing the

offender to unnecessarily languish in prison indefinitely, as is being done to the Plaintiffs.

The Defendants have implemented and enforced this policy and actual practice for years

and have made a knowing and willful decision to continue arbitrarily depriving both the

5

Plaintiffs of treatment despite their authority and ability to resolve these ongoing violations
under the Fourteenth Amendment.

As a direct and proximate result of the Defendants' failure to provide the Plaintiffs with
the opportunity to participate in treatment, both the Plaintiffs have suffered significant damages.

Withhold the declaratory and injunctive relief requested herein, the Plaintiffs will
continue to be harmed by the Defendants' conduct.

## FACTUAL ALLEGATIONS

### Introduction

1.     Matthew Martinez and Stephen Peacock are in the custody of the Colorado Department
of Corrections ("CDOC") serving an indeterminate sentence at the Fremont Correctional Facility
("FCF") under the Colorado Sex Offender Lifetime Supervision Act of 1998 (the "1998 Act").
Pursuant to the plain language of the 1998 Act, sex offenders "shall be required as part of the
sentence to undergo treatment" and will not be released on parole unless they have "successfully
progressed in treatment." Colo. Rev. Stat. §§ 18-1.3-1004(3), 18-1.3-1006(1)(a). As a result,
under the 1998 Act, participation in sex offender treatment is an absolute prerequisite for release
on parole or consideration for release on parole under Colorado law.

2.     Despite this clear statutory mandate, CDOC, by and through the Defendants, are
arbitrarily denying Mr. Martinez and Mr. Peacock the opportunity to participate in sex offender
treatment – without notice, without a hearing, without a meaningful periodic review, and without
a justifiable legitimate penological or state interest. This deprivation of treatment is the result of

6

a conscious decision by CDOC, which refuses to place inmates into treatment according to the

1998 Act and its own Administrative Regulation 700-19, but rather prioritizes treatment based on

a deeply flawed and antiquated system called the Global Waiting List that flouts both the letter

and spirit of the 1998 Act and purposely extends an inmate's incarceration indefinitely contrary

to the legislative intent of the 1998 Act.

3.      The practical and obfuscated result of the conscious and willful decisions by CDOC is

that Mr. Martinez and Mr. Peacock are having their liberty interest in treatment created under the

1998 Act denied to them, and withholding such access has altered their conditions of

confinement under the 1998 Act in a way that sets back their rehabilitation and makes them

ineligible to be considered for parole and causing them to continue to languish in prison contrary

to the legislative intent of the 1998 Act. Despite the fact that both Mr. Martinez and Mr. Peacock

maintain exemplary disciplinary records, meet all criteria for participation in treatment, and have

made a sustained effort to avail themselves of all available resources while incarcerated, they

will never be paroled or even considered for parole unless and until they are permitted access to

treatment as required by the 1998 Act. The Defendants are fully aware of these circumstances

and have made a conscious deliberately indifferent decision not to remedy Mr. Martinez and Mr.

Peacock's continued deprivation of treatment.

4.      To make matters worse, the circumstances surrounding Mr. Martinez and Mr. Peacock's

continued deprivation of treatment are part of a long-standing and well documented policy and

practice on the part of CDOC and the Defendants. Even in the face of damning media coverage,

internal audits, external reviews, and legal directions from the Colorado Attorney General,

7

CDOC, by and through the Defendants, persists in systematically denying treatment to offenders

sentenced under the 1998 Act. As a result, Mr. Martinez and Mr. Peacock and other similarly-

situated offenders continue to languish and suffer in prison without the possibility of parole or to

be considered for parole in a manner that advances no meaningful purpose and serves no

legitimate state or penological interests.

5.      The consequences of this executive overreach are harmful to Mr. Martinez and Mr.

Peacock, other similarly-situated offenders, the public at large, and very balance between several

branches of Colorado state government. At its core, this case is about CDOC, by and through the

Defendants, unilaterally and arbitrarily deciding whether certain individuals will remain in

custody indefinitely by means that are wholly divorced from the judicial process and contrary to

the clear mandate set forth by the 1998 Act. By any objective measure, the Defendants and

CDOC seem primed to continue this unlawful deprivation of treatment for Mr. Martinez and Mr.

Peacock unless and until a court of competent jurisdiction intervenes on their behalf.

## Sex Offender Treatment for Individuals Sentenced Under the 1998 Act

6.      The 1998 Act provides the statutory framework for lifetime supervision of sex offenders.

*See*, C.R.S. § 18-1.3-1001 et seq.

7.      The 1998 Act mandates treatment for sex offenders with indeterminate sentences. In

promulgating the Act, the Colorado state legislature declared:

*The general assembly hereby finds that the majority of persons*

8

> *who commit sex offenses, <u>if incarcerated or supervised without</u>*
> *<u>treatment</u>, will continue to present a danger to the public when*
> *released from incarceration and supervision. The general*
> *assembly also finds that keeping all sex offenders in <u>lifetime</u>*
> *<u>incarceration imposes an unacceptably high cost</u> in both state*
> *dollars and loss of human potential. The general assembly further*
> *finds that some sex offenders respond well to treatment and can*
> *function as safe, responsible, and contributing members of society,*
> *so long as they receive treatment and supervision. <u>The general</u>*
> *<u>assembly therefore declares that a program under which sex</u>*
> *<u>offenders may receive treatment and supervision for the rest of</u>*
> *<u>their lives, if necessary, is necessary for the safety, health, and</u>*
> *<u>welfare of the state.</u>*

Colo.Rev.Stat. § 18-1.3-1001 (emphasis added)

8.     The 1998 Act mandates treatment for sex offenders with indeterminate

sentences:

> *Colorado's Sex Offender Lifetime Supervision Act does not merely*
> *suggest that a prisoner who wants to seek parole might enhance*
> *his chances of being granted early release if he participates in a*
> *sex offender treatment program. To the contrary, the Act states,*
> *"Each sex offender sentenced pursuant to this section shall be*
> ***required** as part of the sentence to undergo treatment to the extent*
> *appropriate to section 16-11.7-105…"*

<u>Beebe v. Heil</u>, 333 F. Supp. 2d 1011, 1016 (D. Colo. 2004) (citing Colo. Rev. Stat. §
18-1.3-1004 (3)) (emphasis in original) (internal citations omitted).

9.     The 1998 Act affords CDOC some limited discretion relative to the manner of

treatment, however, the provision of treatment is mandatory:

> *While the statute does vest some degree of discretion in the*
> *Colorado Department of Corrections, that discretion is not as to*
> *whether a sex offender should receive treatment; rather, it is as to*
> *what kind of treatment is "appropriate" for the offender. Id., Colo.*
> *Rev. Stat. § 16-11.5-105 (requiring provision of appropriate*
> *treatment based upon evaluation of offender, recommendation of*
> *department of corrections, and other factors).*

<u>Beebe</u>, 333 F. Supp. 2d at 1016; *Also see*, <u>Tillery v. Raemisch</u>, 2018 U.S. Dist. LEXIS 170894 at

*16-17, 2018 WL 4777411; *Also see*, <u>Lerner, et al. v. Stancil, et al.,</u> Civil Action No. 22-cv-00888-NYW-NRN at pages 14-16 (May 23, 2023).

10.     The 1998 Act creates a liberty interest in treatment:

> *As stated earlier, Colorado has created a scheme in which a sex offender is required to undergo treatment and in which the Colorado Department of Corrections lacks discretion to withhold treatment. See Colo. Rev. Stat. §§ 18-1.3-1004 (3), 16-11.7-105. The withholding of treatment, then, would work a "major change in the condition of [Plaintiff's] confinement," Vitek, 445 U.S. at 492, since his status would change from "eligible to be considered for parole" to "ineligible to be considered for parole." Such a change would, without doubt, have a serious impact on a prisoner's morale, outlook, hope for the future, and motivation to pursue rehabilitation. As such, there can be no serious dispute that the deprivation of treatment amounts "to a grievous loss to the inmate." Vitek at 492. For this reason, I find that the Plaintiff's Amended Complaint asserts allegations stating a cognizable liberty interest for due process purposes.*

<u>Beebe,</u> 333 F. Supp. 2d at 1017.

> *SOLSA creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully through treatment.*

<u>Allen v. Clements,</u> 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013)

> *In Beebe, the inmate had begun, and was terminated from, the treatment program. In the instant case, Plaintiff is still awaiting admission to the treatment program. . . . The Court here reaffirms its prior ruling and holds that Plaintiff has a liberty interest in being able to access treatment during his incarceration within a reasonable period of time, taking into account when and the relative extent to which he meets the requirements for such treatment under CDOC regulations.*

<u>Tillery v. Raemisch,</u> 2018 U.S. Dist. LEXIS 170894 at *20, 2018 WL 4777411 (October 3, 2018).

> *The Act mandates sex-offender treatment, which creates a "legitimate claim of entitlement" to that treatment by SOLSA inmates like Plaintiffs. See, <u>Bd. of Regents of State Colls.,</u> 408 U.S. at 577; see also, <u>Sutten v. Mikesell,</u> 810 Fed. Appx. 604, 611 (10[th]*

> *Cir. 2020). ("State law creates such an entitlement if 'the asserted*
> *right to property or liberty is mandated by state law when specified*
> *substantive predicates exist.'" (quoting Elliott v. Martinez, 675*
> *F.3d 1241, 1244 (10th Cir. 2012))). That, in turn, creates a liberty*
> *interest for due process purposes. See, Wilkinson, 545 U.S. at 222.*
> *. . . This Court deviates slightly from Beebe and Tillery, which*
> *reached similar conclusions, in its reasoning. While those courts*
> *rooted the liberty interest in treatment's effect on parole and*
> *parole eligibility, this Court roots the liberty interest in the loss of*
> *treatment that is contemplated as SOLSA's "centerpiece." See*
> *Manaois, 488 P.3d at 1109. Without treatment, the conditions of*
> *SOLSA confinement are fundamentally and irretrievably altered;*
> *the inmate loses a segment of the sentence which the General*
> *Assembly deemed necessary and appropriate to punishment,*
> *rehabilitation, and reentry into society at large.*

Lerner, et al. v. Stancil, et al., Civil Action No. 22-cv-00888-NYW-NRN at pages 17-18 (May 23, 2023).

11.    The 1998 Act's legislative intent is to provide for treatment and extended supervision:

> *"[T]he legislature's intent [was] to provide for treatment and*
> *extended supervision, rather than to punish sex offenders with*
> *terms of incarceration longer than those of other felons of the*
> *same class."*

Vensor v. People, 151 P.3d 1274, 1278 (Colo. 2007).

12.    CDOC offers sex offender treatment as mandated by the 1998 Act and associated

regulation, CDOC Administrative Regulation 700-19, through a program called the Sex Offender

Treatment and Monitoring Program (the "SOTMP").

13.    At all times relevant to this action, admittance to the SOTMP was limited in such a

manner that some inmates sentenced under the 1998 Act have been unable to obtain any measure

of treatment and will therefore remain in custody indefinitely.

11

14.    Administrative Regulation 700-19 ("AR 700-19"), promulgated by the CDOC, enforced

by the Defendants, and specifically endorsed by the Executive Director, currently Defendant

Stancil, purports to set for the manner in which individuals sentenced under the 1998 Act are

prioritized for treatment under the so-called "Global Referral List":

> 1.  Offenders with judicial determinations of a sex crime that are within 4 years
>     of their eligibility date are prioritized for sex offense specific treatment based
>     upon, but not limited to, the following:
>     a.  Parole eligibility date
>     b.  Risk for sexual recidivism
>     c.  Prior SOTMP treatment opportunities
>     d.  Institutional behavior

CDOC AR 700-19(E)(1).

15.    CDOC's current treatment model funnels participants into different "treatment tracks"

based upon "perceived" treatment needs – and do not affect the statutory language that

"requires" CDOC to provide treatment to Mr. Martinez and Mr. Peacock and other similarly-

situated individuals.

16.    CDOC, by and through the Defendants in this action, has knowingly and willfully

managed and operated the Global Referral List in a manner contrary to the letter and spirit of the

1998 Act and AR 700-19.

17.    The Global Referral List is generated by an "antiquated" DOS-based system developed in

the 1980's, to manage the Global Referral List. The algorithm used to determine priority is

unknown to Defendants, the CDOC does not know the exact factors that the algorithm takes into

account or the relative weight of the factors, and that "it is impossible to determine how each of

12

the factors input into the system will impact priority placement, if at all." This program is called

"MPS," is effectively a sham and assignments to treatment are not necessarily based on the

priorities outlined in AR 700-19 and there is no way to dispute an offender's position on the

Global Referral List. Tillery, at 9-12.

18.     The Global Referral List, to the extent that it functions at all, does not comply with the

parameters set forth in AR 700-19.

19.     The Global Referral List does not afford any meaningful process or procedure by which

offenders will be prioritized for treatment in the SOTMP.

20.     CDOC, by and through the Defendants in this action, prioritize individuals for treatment

based on criteria unrelated to any legitimate penological interests and beyond the purview of AR

700-19, including, without limitation, the conveniences of CDOC therapeutic staff and cost

savings for CDOC, which is contrary to the mandate of the 1998 Act and the State of Colorado's

legitimate state interests in the treatment of sex offenders and the treatment and supervision

necessary for the safety, health, and welfare of the state.

Mr. Martinez' Efforts to Gain access to the SOTMP

21.     On or about September 12, 2019, Mr. Martinez pled guilty to sexual assault in violation

of 18-3-402(1)(a), C.R.S., and on or about November 7, 2019 was sentenced to an indeterminate

sentence of 8 years to life incarceration under the 1998 Act.

22.     Mr. Martinez was processed through the Denver Reception and Diagnostic Center

("DRDC") and then assigned and transferred to the Core Civic privately operated Crowley

County Correctional Facility ("CCCF"), which assignment was made on the basis of available

bed space and security classification and took no account of his treatment needs, or the 1998 Act

mandate, or the fact that he would be deprived of the opportunity to participate in the SOTMP.


23.     At the time Mr. Martinez was assigned to CCCF, CDOC officials, including the

Defendants, knew that the SOTMP was not available at CCCF, and that Mr. Martinez would be

denied timely access to the SOTMP by virtue of his housing assignment. Mr. Martinez had no

notice that the SOTMP was unavailable at CCCF and no opportunity to be heard or seek review

of this assignment to CCCF.


24.     When Mr. Martinez arrived at CCCF, it became abundantly clear through statements

made by his Case Manager Mary Mann and conversations with other inmates that the SOTMP

would be unavailable to him at CCCF, and that he would remain incarcerated indefinitely while

waiting to get into the SOTMP program.


25.     On or about June 2021, Mr. Martinez sent Case Manager III Kristie Moore at the

Fremont Correctional Facility ("FCF") an application for the FCF Incentive Unit and on or about

August 20, 2021 he was approved for assignment to the FCF Incentive Unit and transferred to

FCF.


26.     After arriving at FCF, Mr. Martinez found out that the SOTMP was available in the

14

facility, so he contacted Mr. Bailey of the FCF SOTMP Staff and was informed on September

29, 2021:

> "Your kites were received. Offenders must be four years or less
> until their Parole Eligibility Date (PED) to be placed on the Global
> Referral List (GRL). At this time there is more than 4 years before
> your PED. Once you are within four years of your PED you will
> need to complete an SOTMP participation assessment form."

27.    On or about November 2021, Mr. Martinez contacted Mr. Bailey asking general

questions about the SOTMP Program including how long the wait may be to participate in and

complete treatment and was informed on December 6, 2021:

> "Offender Martinez
> The SOMB standards are available online. Your family or support
> people can access them. As for how long it takes to complete
> SOTMP treatment, it is a very individualized process and it is
> different for everyone. It depends on a lot of factors. It can take
> anywhere from 8 months or longer."

28.    On October 10, 2022, Mr. Martinez received notification from the FCF SOTMP Team

and was informed:

> "You have been staffed by the SOTMP management team. Per
> your OSE, it was recommended that you participate in SOTMP.
> You meet the guidelines set out in AR 700-19 to remain an S5R.
> At time your subcode will not be lowered."

29.    Then, on October 17, 2022, Mr. Martinez was given an SOTMP participation assessment

form to fill out.

30.    After not being placed in the SOTMP for over one year and eight months, Mr. Martinez

filed a Step One grievance on or about April 17, 2023 requesting treatment and the opportunity

to participate in the SOTMP.

15

31.    On or about April 27, 2023, Mr. Martinez received a response to his Step One grievance:

> "Mr. Martinez,
> A review of your Grievance Form and the concern you presented
> was completed. Mr. Martinez, if the Sex Offender Treatment &
> Monitoring Program (SOTMP) understands your request, you feel
> like you should be placed immediately into treatment. First, Mr.
> Martinez, congratulations on taking the steps necessary to
> participate in SOTMP Treatment! A review of your records
> indicates you are currently on the Colorado Department of
> Corrections (DOC) Global Referral Wait-List for SOTMP
> Treatment and are now waiting for your opportunity to participate.
>
> Mr. Martinez, in looking at your treatment placement concern,
> please note that DOC Administrative Regulation (AR) 700-19
> outlines the prioritization for clients for SOTMP treatment
> placement. This regulation notes "to the extent resources permit,
> offenders may be prioritized for treatment based upon, but not
> limited to, parole eligibility date, ongoing comprehensive risk
> assessment, appropriate institutional behavior and placement, and
> prior SOTMP treatment opportunities." Mr. Martinez, based upon
> this regulation, your parole eligibility date appears to be the
> influencing factor for your treatment prioritization as you do not
> seem to have any pervious SOTMP treatment opportunities or
> recent inappropriate institutional behavior(s). Consequently, your
> current status appears correct as you are on the DOC Global
> Referral Wait-List for SOTMP Treatment and will be placed into
> treatment based upon DOC AR 700-19 prioritization.
>
> As such Mr. Martinez, your grievance requires no relief at this
> time. Nevertheless, the DOC and SOTMP would like to encourage
> you to participate in any DOC treatment, including your future
> opportunity at SOTMP treatment. The DOC is dedicated to
> providing opportunities for a client's potential success. Research of
> the SOTMP and other treatment programs has shown to have an
> impact on recidivism. As such Mr. Martinez, the SOTMP hopes
> that this information will aid you in knowing that clients who are
> motivated and participate in the SOTMP and other treatment
> programs tend to be more successful when released. The SOTMP
> hopes that you take advantage of this or any other DOC treatment
> opportunity."

32.    Mr. Martinez then filed a Step Two grievance on May 11, 2023 requesting treatment and

the opportunity to participate in the SOTMP.

16

33.    On or about May 17, 2023, Mr. Martinez received a response to his Step Two grievance:

> "Mr. Martinez
> I have read and reviewed your grievance. In looking at your
> treatment placement concern, please note that DOC Administrative
> Regulation (AR) 700-19 outlines the prioritization for clients for
> SOTMP treatment placement. This regulation notes "to the extent
> resources permit, offenders may be prioritized for treatment based
> upon, but not limited to, parole eligibility date, ongoing
> comprehensive risk assessment, appropriate institutional behavior
> and placement, and prior SOTMP treatment opportunities."
>
> You are currently on the waitlist for SOTMP and will be placed
> accordingly based on your parole eligibility date (PED). The
> SOTMP prioritizes clients based on the PED and those with an
> older PED will receive treatment first. You will have an
> opportunity for treatment once your name reaches the top of the
> list. At that point, you will be contacted by SOTMP and enrolled in
> treatment.
>
> However, DOC and SOTMP would like to encourage you to
> participate in any DOC treatment and hopes that you take
> advantage of any other DOC treatment available to you in the
> meantime."

34.    Mr. Martinez then filed a Step Three grievance on May 17, 2023 requesting treatment

and the opportunity to participate in the SOTMP.

35.    On or about July 11, 2023 Mr. Martinez received a response to his Step Three grievance:

> "I have reviewed your Step 3 grievance that you filed with regard
> to SOTMP.
>
> There is a priority of treatment of offenders and that prioritization
> is articulated in AR 700-19. In this time of limited resources there
> are a limited number of treatment slots available. There is no
> method to determine the exact time line for treatment; however if
> you have indeterminate life sentence and designated "R" for
> treatment, there is a priority list. You should review AR 700-19 for
> the criteria regarding treatment or you can kite mental health
> (SOTMP) for questions regarding treatment qualifications. You do
> not have to complete SOTMP to be considered for parole, but you

17

must be progressing in treatment. Based upon the foregoing, I
cannot recommend any relief in this matter.

Your request for relief is denied. This is the final administrative
response in this matter and you have exhausted your administrative
remedies."

36.     On or about July 1, 2023 Mr. Martinez sent separate letters to Defendants: Executive

Director of CDOC, Moses "Andre" Stancil; Director of Clinical Services for CDOC, Michelle

Brodeur; and the Administrator of the SOTMP Program, Amanda Retting asking for access to

the SOTMP as mandated by the 1998 Act as his sentence under the 1998 Act, in fact, required

his participation in sex-offense-specific treatment to be eligible for parole and consideration for

release on parole.

37.     On or about July 25, 2023 Mr. Martinez sent a separate letter to the Defendant: Director

of Behavioral Health for CDOC, Kimberly Kline asking for access to SOTMP as mandated by

the 1998 Act as his sentence under the 1998 Act, in fact, required his participation in sex-

offense-specific treatment to be eligible for parole and consideration for release on parole.

38.     Mr. Martinez as of this date of filing has not received a response from the Defendants.

Mr. Peacock's Efforts to Gain Access to the SOTMP

39.     On or about February 12, 2020, Mr. Peacock was convicted by jury of (2) counts Pimping

in violation of 18-7-206, C.R.S.; (2) counts Patronizing a Prostitute in violation of 18-7-205,

C.R.S.; (2) counts of Pandering in violation of 18-7-203(1)(b), C.R.S.; and (1) count Sexual

18

Assault in violation of 18-3-402, C.R.S., and on or about July 9, 2020 was sentenced to an

indeterminate sentence of a cumulated term of 8 years to life incarceration under the 1998 Act.

40.     Mr. Peacock was processed through DRDC and then assigned and transferred to the Core

Civic privately operated CCCF, which assignment was made on the basis of available bed space

and security classification and took no account of his treatment needs, or the 1998 Act mandate,

or the fact that he would be deprived of the opportunity to participate in the SOTMP.

41.     At the time Mr. Peacock was assigned to CCCF, CDOC officials, including the

Defendants, knew that the SOTMP was not available at CCCF, and that Mr. Peacock would be

denied timely access to the SOTMP by virtue of his housing assignment. Mr. Peacock had no

notice that the SOTMP was unavailable at CCCF and no opportunity to be heard or seek review

of this assignment to CCCF.

42.     When Mr. Peacock arrived at CCCF, it became abundantly clear through statements

made by his Case Manager Mr. Holcomb and conversations with other inmates that the SOTMP

would be unavailable to him at CCCF, and that he would remain incarcerated indefinitely while

waiting to get into the SOTMP program.

43.     On or about August 5, 2021 Mr. Peacock received notification from the FCF SOTMP

team:

> "Offender Peacock,
>  You are currently on the Global Referral List (GRL) to be placed
>  in a Track I group. At this time, you are currently 179 on the GRL
>  list. This number can change based on a variety of factors. You

will be notified when you are placed in a group."

44.   On or about January 10, 2022 Mr. Peacock through his Case Manager Mr. Holcomb

received notification that his priority number on the GRL was:

"#645".

45.   On or about January 12, 2022 Mr. Peacock sought to clarify why his priority number

increased from #179 to #645 though his Case Manager Mr. Holcomb. To which Mr. Holcomb

responded:

> "Received response [from DOC] stating it is now 640. These
> numbers continually fluctuate."

46.   On or about April 9, 2022 Mr. Peacock sent notification to his Case Manager Mr.

Holcomb to schedule his reclassification hearing, to reiterate his desire to transfer to the FCF

Incentive Unit, and for further clarification about his GRL priority number. To which Mr.

Holcomb responded:

> "Please see attached apt. slip. You are as far as I know. Updated
> waitlist hasn't been sent. App processed on 2/14/22."

47.   On or about May 29, 2022 Mr. Peacock sent notification to his Case Manager Mr.

Holcomb for clarification about his GRL priority number and efforts for his transfer to the FCF

Incentive Unit. To which Mr. Holcomb responded:

> "CDOC is no longer providing numbers due to high amount of
> requests and the fluctuating nature of the GRL. Email sent to
> Palomino, I will advise when she responds."

48.   On or about September 28, 2022 Mr. Peacock was approved for assignment to the FCF

Incentive unit and transferred to FCF.

20

49.     When Mr. Peacock arrived at FCF, it became abundantly clear through statements made

by his Case Manager Ms. Miller and conversations with other inmates that SOTMP was

available at the facility. However, the wait-time for treatment would far exceed his imminent

parole date, and that he would be denied parole indefinitely while waiting to get into the SOTMP

program.

50.     On or about December 14, 2022 Mr. Peacock requested a transfer to DRDC in order to

receive treatment at that facility, to which his Case Manager Ms. Miller responded:

> "There is no application process for treatment. Each facility uses
> the GRL (global referral list) once you come up to the top on that
> you [will] be placed into treatment."

51.     After not being placed in the SOTMP for over one year and four months, Mr. Peacock

met with the Colorado Parole Board for the first time on December 5, 2022 and was given a one-

year deferment. The reasons being:

> "Offender awaiting program," and "Untreated Criminogenic
> Needs/Insufficient Tx Dosage."

52.     On or about May 10, 2023, Mr. Peacock filed a Step One grievance, requesting treatment

and the opportunity to participate in the SOTMP.

53.     On or about May 17, 2023, Mr. Peacock received a response to his Step One grievance:

> "Mr. Peacock,
> A review of your Grievance Form and the concern you presented
> was completed. Mr. Peacock, if the Sex Offender Treatment &
> Monitoring Program (SOTMP) understands your request, you feel
> like you should be placed immediately into treatment. First, Mr.
> Peacock, congratulations on taking the steps necessary to
> participate in SOTMP Treatment! A review of your records

21

indicates you are currently on the Colorado Department of
Corrections (DOC) Global Referral Wait-List for SOTMP
Treatment and are now waiting for your opportunity to participate.

Mr. Peacock, in looking at your treatment placement concern,
please note that DOC Administrative Regulation (AR) 700-19
outlines the prioritization for clients for SOTMP treatment
placement. This regulation notes "to the extent resources permit,
offenders may be prioritized for treatment based upon, but not
limited to, parole eligibility date, ongoing comprehensive risk
assessment, appropriate institutional behavior and placement, and
prior SOTMP treatment opportunities." Mr. Peacock, based upon
this regulation, your parole eligibility date appears to be the
influencing factor for your treatment prioritization as you do not
seem to have any pervious SOTMP treatment opportunities or
recent inappropriate institutional behavior(s). Consequently, your
current status appears correct as you are on the DOC Global
Referral Wait-List for SOTMP Treatment and will be placed into
treatment based upon DOC AR 700-19 prioritization.

As such Mr. Peacock, your grievance requires no relief at this time.
Nevertheless, the DOC and SOTMP would like to encourage you
to participate in any DOC treatment, including your future
opportunity at SOTMP treatment. The DOC is dedicated to
providing opportunities for a client's potential success. Research of
the SOTMP and other treatment programs has shown to have an
impact on recidivism. As such Mr. Peacock, the SOTMP hopes
that this information will aid you in knowing that clients who are
motivated and participate in the SOTMP and other treatment
programs tend to be more successful when released. The SOTMP
hopes that you take advantage of this or any other DOC treatment
opportunity."

54.    Mr. Peacock then filed a Step Two grievance on May 19, 2023 requesting treatment and

the opportunity to participate in the SOTMP.

55.    On or about June 20, 2023, Mr. Peacock received a response to his Step Two grievance:

"Mr. Peacock
I have read and reviewed your grievance. In looking at your
treatment placement concern, please note that DOC Administrative
Regulation (AR) 700-19 outlines the prioritization for clients for

22

SOTMP treatment placement. This regulation notes "to the extent
resources permit, offenders may be prioritized for treatment based
upon, but not limited to, parole eligibility date, ongoing
comprehensive risk assessment, appropriate institutional behavior
and placement, and prior SOTMP treatment opportunities."

You are currently on the waitlist for SOTMP and will be placed
accordingly based on your parole eligibility date (PED). The
SOTMP prioritizes clients based on the PED and those with an
older PED will receive treatment first. You will have an
opportunity for treatment once your name reaches the top of the
list. At that point, you will be contacted by SOTMP and enrolled in
treatment.

However, DOC and SOTMP would like to encourage you to
participate in any DOC treatment and hopes that you take
advantage of any other DOC treatment available to you in the
meantime."

56.     Mr. Peacock then filed a Step Three grievance on June 20, 2023 requesting treatment and

the opportunity to participate in the SOTMP.


57.     On or about August 4, 2023 Mr. Peacock received a response to his Step Three

grievance:

"I have reviewed your Step 3 grievance that you filed with regard
to SOTMP.

There is a priority of treatment of inmates and that prioritization is
articulated in AR 700-19. In this time of limited resources there are
a limited number of treatment slots available. There is no method
to determine the exact time line for treatment; however, if you
have indeterminate life sentence and designated "R" for treatment,
there is a priority list. You should review AR 700-19 for the
criteria regarding treatment or you can kite mental health
(SOTMP) for questions regarding treatment qualifications. You do
not have to complete SOTMP to be considered for parole, but you
must be progressing in treatment. Based upon the foregoing, I
cannot recommend any relief in this matter.

Your request for relief is denied. This is the final administrative

23

response in this matter and you have exhausted your administrative
remedies."

58.    On or about July 1, 2023 Mr. Peacock sent separate letters to Defendants: Executive

Director of CDOC, Moses "Andre" Stancil; Director of Clinical Services for CDOC, Michelle

Brodeur; and the Administrator of the SOTMP Program, Amanda Retting asking for access to

the SOTMP as mandated by the 1998 Act as his sentence under the 1998 Act, in fact, required

his participation in sex-offense-specific treatment to be eligible for parole and consideration for

release on parole.

59.    On or about July 25, 2023 Mr. Peacock sent a separate letter to the Defendant: Director of

Behavioral Health for CDOC, Kimberly Kline asking for access to SOTMP as mandated by the

1998 Act as his sentence under the 1998 Act, in fact, required his participation in sex-offense-

specific treatment to be eligible for parole and consideration for release on parole.

60.    Mr. Peacock as of this date of filing has not received a response from the Defendants.

Other Circumstances Relevant to Participation in the SOTMP

61.    At all times relevant to this action, Mr. Martinez and Mr. Peacock met (and continues to

meet) treatment participation criteria for the SOTMP.

62.    At all times relevant to this action, participation in the SOTMP was clinically appropriate

for Mr. Martinez and Mr. Peacock based upon the evaluations and assessment conducted on

24

them by CDOC staff.

63.    At all times relevant to this action neither Mr. Martinez nor Mr. Peacock have received
notice, an opportunity to be heard, or a meaningful periodic review regarding the refusal of
CDOC and the Defendants to provide either Mr. Martinez or Mr. Peacock access to the SOTMP.

64.    At all times relevant to this action, Mr. Martinez was (and continues to be) classified as
"S5" under AR 700-19(IV)(A) and "R-Ready" under AR 700-19 (IV)(B), meaning that he is
recommended for sex offense specific treatment and that he is ready to commence treatment.

65.    To date, Mr. Martinez has not received notice, an opportunity to be heard, or a
meaningful periodic review of his "S5" designation or his "R-Ready" designation.

66.    At all times relevant to this action, Mr. Peacock was (and continues to be) classified as
"S5" under AR 700-19(IV)(A) and "R-Ready" under AR 700-19(IV)(B), meaning that he is
recommended for sex offense specific treatment and that he is ready to commence treatment.

67.    To date, Mr. Peacock has not received notice, an opportunity to be heard, or a meaningful
periodic review of his "S5" designation or his "R-Ready" designation.

68.    At all times relevant to this action, the Defendants had the authority and ability to provide
both Mr. Martinez and Mr. Peacock with an opportunity to participate in the SOTMP by making
the SOTMP available to them but nefariously determined not to.

25

69.     There are no legitimate justifiable reasons that would preclude either Mr. Martinez or Mr.

Peacock from engaging in the SOTMP; therefore, both Mr. Martinez' and Mr. Peacock's

confinement under the SOLSA are fundamentally and irretrievably altered. Mr. Martinez' and

Mr. Peacock's confinement in CDOC under the SOLSA without treatment thus effects an

"atypical and significant hardship on them in relation to the ordinary incidents of prison life,"

and they have lost the segment of their sentences which the Colorado General Assembly deemed

necessary and appropriate to their punishment, rehabilitation, and reentry into society at large.


70.     The actions of the CDOC, by and through the Defendants, violate Mr. Martinez' and Mr.

Peacock's liberty interest in the loss of treatment that is contemplated as the SOLSA's

"centerpiece" of both custody and treatment, and release, not indefinite incarceration.


71.     Mr. Martinez and Mr. Peacock stand ready to actively engage in treatment should they be

provided the opportunity to participate in the SOTMP whether such treatment is rendered by

CDOC.


## E.     PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you
were incarcerated? ___ Yes _X_ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one
previous lawsuit, use additional paper to provide the requested information for each previous
lawsuit. Please indicate that additional paper is attached and label the additional pages
regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):          N/A

Docket number and court:          N/A

26

Claims raised:                                   N/A _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)   N/A _____

Reasons for dismissal, if dismissed:            N/A _____

Result on appeal, if appealed:                  N/A _____

## F.   ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal
court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or
judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

   X  Yes ___ No (*check one*)

Did you exhaust administrative remedies?

   X  Yes ___ No (*check one*)

## G.   REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed
to identify the relief you are requesting, use extra paper to request relief. Please indicate that
additional paper is attached and label the additional pages regarding relief as "G. REQUEST
FOR RELIEF."*

The Plaintiffs respectfully request that this Court enter judgment in their favor and against the
Defendants, and grant the Plaintiff's relief including, without limitation, the following:

   a. That this Court declare that the Plaintiffs have a cognizable state-created liberty interest
      in accessing sex offender treatment under the 1998 Act and implementing regulations;

   b. That this Court declare that the Plaintiffs have a cognizable state-created liberty interest
      in accessing sex offender treatment in a time and manner that will afford then an
      opportunity to meaningfully progress in treatment prior to their parole eligibility date;

   c. That this Court declare the actions of the Defendants described in this Prisoner Complaint
      to be in violation of the Plaintiffs' procedural due process rights under the Fourteenth
      Amendment;

d. That this Court declare the actions of the Defendants described in this Prisoner Complaint to be in violation of the Plaintiffs' substantive due process rights under the Fourteenth Amendment;

e. That this Court enter an injunction ordering the Defendants to provide the Plaintiffs with the opportunity to participate in treatment forthwith;

f. That this Court award attorney's fees and costs of this action, including expert witness fees, on all claims allowed by law;

That this Court award the Plaintiffs such additional and alternative relief as may be just, proper, and equitable.


## H.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Matthew J. Martinez)

_____
(Stephen E. Peacock)

08/07/2023
_____
(Date)

8 | 07 | 2023
_____
(Date)

(Revised November 2022)

28

COLORADO DEPARTMENT OF CORRECTIONS
LEGAL ACCESS PROGRAM
## REQUEST FOR PRISONER ELECTRONIC SCANNING (PEF) | COVER PAGE

**INCOMPLETE FORMS WILL BE DENIED.**          TODAY'S DATE: _08/07/2023_

LAST NAME: _Martinez_      FIRST INITIAL: _M_      DOC#: _186896_

FACILITY: _FCF_      HOUSING UNIT: _8_      TIER: _2_      CELL: _N17_

## STATE THE TYPE OF DOCUMENT BEING SENT:

☐ 42 USC §1983 INITIAL **COMPLAINT** (FORM=6 PGS.) TOTAL PGS. BEING SENT: _____

☐ 28 USC §1915 **INFORMA PAUPERIS 1983 COMPLAINT** (FORM=4 PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2241 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=4PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2254 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=6PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §2255 **APPLICATION FOR A WRIT OF HABEAS CORPUS** (FORM=5 PGS) TOTAL PGS. BEING SENT: _____

☐ 28 USC §1915 **INFORMA PAUPERIS FOR HABEAS** (FORM=2PGS) TOTAL PGS. BEING SENT: _____

☐ Other, please list document(s) here with page number for each document:

_____
_____
_____

*OFFENDER MUST PROVIDE COURT ORDER TO CURE DEFICIENCIES TO LEGAL ASSISTANT*
☑ CHECK HERE IF THIS IS AN AMENDED COMPLAINT _____
☑ CHECK HERE IF THIS IS IN RESPONSE TO CURE DEFICIENCY ___✓___

OFFENDER SIGNATURE _____
*(Sign on this line)*

## DO NOT WRITE BELOW THIS LINE
Date Request Received: _AUG 07 2023_   Facility Law Library _FCF_   Legal Assistant's Initials _CLL_
TOTAL PAGES WITH THIS FAX, INCLUDING THIS COVER PAGE __29__

Your request has been **DENIED:** _____ in whole _____ **in part for the following reason(s):**
____ Your request form was not properly completed (Missing required signature, last name, first initial, full cell location, facility, unit, tier, cell, DOC #, date, etc.)
____ The material you have submitted does not meet program definitions of legal material, as described in AR 750-01.
____ Your PEF request exceeds the page limit established by the Legal Access Program (see attached). Also see posted PEF policies.
____ You have not submitted the documents to be scanned.
____ The Legal Access Program will not allow scanning/transmission of ARs, IAs, OMs, case law, statutes, court rules, session laws, or material contained in the law library, even as attachments/exhibits.(Exception for non-published case law to be attached to a pleading.)
____ The Legal Access Program will not allow scanning/transmission of transcripts, electronic or paper media, including but not limited to transcripts, court records, and discovery from courts or attorneys, incomplete documents, altered documents, and/or blank forms.
____ The Legal Access Program will not allow scanning/transmission of non-original documents, previously-copied/scanned documents, incoming correspondence, or documents (account statements, mittimus, etc.), grievances, COPD appeals; except as exhibits attached to an original pleading being filed with the court. Your pleading must include a statement referring to the attached exhibits in order for them to be scanned/transmitted.
____ The Legal Access Program will not allow scanning/transmission of documents which have any substance on them (such as dirt, food, coffee, hair, bodily secretions, glue, tape, toothpaste, etc.
____ Documents containing UCC/Sovereign citizen statements or signatures will not be allowed to be scanned/transmitted.
____ You may bring your request into compliance and resubmit.
Other _____
_____

METER END: _____   MINUS (-) METER BEGIN: _____   EQUALS (=) TOTAL ADMIN COPIES: _____